[Cite as *Harris-Miles v. Lakewood Hosp.*, 2018-Ohio-664.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

| | |
|---|---|
| Gaye Lynn Harris-Miles, et al.. | Court of Appeals No. E-17-023 |
| Appellants | Trial Court No. 2015 CV 0622 |
| v. | |
| Lakewood Hospital, et al. | **DECISION AND JUDGMENT** |
| Appellees | Decided: February 23, 2018 |

* * * * *

Danielle C. Kulik and Geoffrey L. Oglesby, for appellants.

Michael P. Murphy and Taylor C. Knight, for appellees.

* * * * *

**MAYLE, P.J.**

{¶ 1} Plaintiffs-appellants, Gaye Lynn Harris-Miles, Timothy Miles, Amanda

Kaye Miles, and Alexis Renee Miles, appeal the June 20, 2017 judgment of the Erie

County Court of Common Pleas granting summary judgment in favor of defendants-appellees, Alfred Serna, M.D. and the Cleveland Clinic. For the following reasons, we affirm.

## I. Background

{¶ 2} Defendant-appellant, Alfred Serna, M.D., is an orthopedic surgeon who practices with the Cleveland Clinic. On August 29, 2014, Gaye Harris-Miles presented to Dr. Serna for a surgical consult relative to her left shoulder. After evaluating Harris-Miles, and because more conservative treatment had failed, a plan was made to go forward with an arthroscopic rotator cuff procedure, a routine surgical procedure performed on an outpatient basis.

{¶ 3} Harris-Miles had a history of interstitial lung disease ("ILD") and bronchiectasis, so the anesthesiology department—which worked alongside Dr. Serna as part of Harris-Miles' medical team—sought clearance from Cleveland Clinic's pulmonology department before proceeding to surgery. On September 8, 2014, the pulmonologist—Dr. Highland[1]—cleared Harris-Miles for surgery, but noted that the procedure needed to be performed at a hospital rather than a surgical center because of the potential need for supplemental oxygen. The anesthesiology department classified Harris-Miles as ASA2, meaning that she was low-risk and had been cleared to undergo surgery.

---

[1] Dr. Highland's first name does not appear in the record.

2.

{¶ 4} On September 26, 2014, a physician's assistant from Dr. Serna's department performed a detailed examination of Harris-Miles, and her surgery was scheduled to proceed on October 6, 2014, at Cleveland Clinic's Lakewood Hospital ("Lakewood"). Dr. Serna successfully performed the procedure without complication. After the surgery, however, Harris-Miles began coughing up blood and experienced desaturations in her oxygen levels. Dr. Serna ordered anesthesiology and pulmonology consults. It was determined that Harris-Miles had suffered an alveolar hemorrhage. She was admitted to Lakewood, and on October 9, 2014, she was transferred to the Cleveland Clinic's main campus where she remained until her discharge on October 14, 2014.

{¶ 5} Harris-Miles, her husband, and her two minor children, filed a complaint against Fairview Hospital (later amended to Cleveland Clinic-Lakewood Hospital[2]), Dr. Serna, and Drs. John Doe anesthesiologists. They alleged that Dr. Serna and the John Doe anesthesiologists rendered negligent care to Harris-Miles, and that as employees or agents of the hospital, Cleveland Clinic was responsible for their actions under the doctrine of respondeat superior. Harris-Miles' husband and children asserted claims for loss of consortium. After a number of requests for extensions, Harris-Miles provided an affidavit of merit, as required by Civ.R. 10(D)(2), from Casey Darrah, M.D., a physician who practices family medicine. The John Doe defendants were never substituted.

---

[2] Plaintiffs incorrectly named "Lakeview" instead of "Lakewood," but Lakewood answered the amended complaint.

3.

{¶ 6} On December 20, 2016, Cleveland Clinic and Dr. Serna filed a motion for summary judgment. They claimed that (1) Dr. Darrah was not critical of the care and treatment rendered by Dr. Serna; (2) Dr. Darrah is not qualified to render standard-of-care opinions applicable to either Dr. Serna, the anesthesiologist, or the pulmonologist, Dr. Highland; (3) Harris-Miles cannot establish a causal nexus between her injuries and the actions of Dr. Serna, the anesthesiologist, or Dr. Highland; (4) the statute of limitations has expired relative to Dr. Highland's treatment of Harris-Miles, so no claim can be brought against her; and (5) because Harris-Miles cannot maintain a claim against Dr. Highland, Cleveland Clinic is entitled to dismissal. Harris-Miles opposed the motion for summary judgment.

{¶ 7} On February 13, 2017, in a one-sentence judgment entry, the trial court granted summary judgment to Dr. Serna and Cleveland Clinic. Without explanation, it also denied Harris-Miles' request for findings of facts and conclusions of law in an order journalized on March 21, 2017. Harris-Miles appealed. In a decision dated June 13, 2017, we found that the February 13, 2017 judgment was not a final, appealable order, and we remanded the matter to the trial court for entry of a final, appealable order. The trial court amended its judgment entry, and it was journalized on June 20, 2017.

{¶ 8} Harris-Miles assigns the following errors for our review:

Assignment of Error No. I:

DEFENDANT, DR. SERNA FAILED TO SHOW HOW SUMMARY JUDGMENT WAS PROPER AND THE COURT ERRED IN GRANTING THE SAME.

Assignment of Error No. II:

DEFENDANT, THE CLEVELAND CLINIC FAILED TO SHOW HOW SUMMARY JUDGMENT WAS PROPER AND THE COURT ERRED IN GRANTING THE SAME.

## II.  Standard of Review

{¶ 9} Appellate review of a summary judgment is de novo, *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996), employing the same standard as trial courts.  *Lorain Natl. Bank v. Saratoga Apts.,* 61 Ohio App.3d 127, 129, 572 N.E.2d 198 (9th Dist.1989).  The motion may be granted only when it is demonstrated:

> (1)  that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor.  *Harless v. Willis Day Warehousing Co.,* 54 Ohio St.2d 64, 67, 375 N.E.2d 46 (1978), Civ.R. 56(C).

{¶ 10} When seeking summary judgment, a party must specifically delineate the basis upon which the motion is brought, *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 526 N.E.2d 798 (1988), syllabus, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact.  *Dresher v. Burt*, 75 Ohio St.3d 280, 293,

5.

662 N.E.2d 264 (1996). When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleadings, but must respond with specific facts showing that there is a genuine issue of material fact. Civ.R. 56(E); *Riley v. Montgomery*, 11 Ohio St.3d 75, 79, 463 N.E.2d 1246 (1984). A "material" fact is one which would affect the outcome of the suit under the applicable substantive law. *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 304, 733 N.E.2d 1186 (6th Dist.1999); *Needham v. Provident Bank*, 110 Ohio App.3d 817, 826, 675 N.E.2d 514 (8th Dist.1996), citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 201 (1986).

### III. Law and Analysis

{¶ 11} Harris-Miles assigns error in the trial court's decision granting summary judgment to both Dr. Serna and to Cleveland Clinic. She disputes the assertion that Dr. Darrah rendered no opinions critical of Dr. Serna, and she insists that he was qualified to render standard-of-care opinions in this case. As such, she argues, summary judgment in favor of Dr. Serna and Cleveland Clinic was not appropriate. She also claims that Cleveland Clinic may be held liable regardless of whether Dr. Highland was named a party to the lawsuit, and she insists that Dr. Darrah's testimony was sufficient to establish causation.

### A. Dr. Darrah's Testimony

{¶ 12} Dr. Darrah was examined about his qualifications and his opinions relative to Harris-Miles' treatment. He testified that he has been licensed to practice medicine in Ohio since December of 2015. At the time of his deposition, he was working at a

6.

suboxone treatment clinic treating patients with drug addictions. He explained that many of his patients do not have primary care physicians, so he often serves as a family practice physician for them. In that role, he testified, he will sometimes provide pre-operative medical clearance. Although medical clearance for his patients is sought in the context of their addiction issues, he explained that he tends to include "the entire review of systems" so that the surgeon has a complete view of the patient. Dr. Darrah conceded that he has never worked as an orthopedic surgeon, a pulmonologist, or an anesthesiologist. He explained, however, that pre-operative and post-operative care frequently "falls on family medicine," and he has treated about a dozen patients with alveolar hemorrhages, thus he believes himself qualified to render standard-of-care opinions.

{¶ 13} Dr. Darrah agreed that it was appropriate for Harris-Miles' medical team to seek pulmonary clearance prior to her surgery because she had a history of ILD and systemic sclerosis. He acknowledged that Dr. Highland provided this medical clearance on September 8, 2014. While Dr. Highland advised that the surgery should take place in a hospital setting in case supplemental oxygen was required, Dr. Darrah believes that her clearance should have mentioned that Harris-Miles had ILD and that she had a history of slow emergence from anesthesia. He believes this would have prompted additional questions from her medical team. Dr. Darrah agreed that surgery was not contraindicated as a result of Harris-Miles' medical history, and he testified that it was reasonable for Dr. Serna to rely on the pulmonologist's opinion that Harris-Miles was an acceptable risk for

7.

surgery. When asked whether there was anything that Dr. Serna "did or didn't do that was going to change the outcome for this patient," Dr. Darrah responded,"[p]ulmonology was the issue."

{¶ 14} Dr. Darrah testified that because of Harris-Miles' medical history, she should have been prescribed a steroid which, he contended, would have reduced the risk of alveolar hemorrhage. He testified that placing the patient on a steroid would have been the pulmonologist's responsibility. When asked whether it was more likely than not that the alveolar hemorrhage would not have occurred had Harris-Miles been placed on a steroid, Dr. Darrah responded only that it would have mitigated the risk. He conceded, "[t]hat's the furthest I can go."

## B. Harris-Miles' Claims

{¶ 15} While Dr. Serna and Cleveland Clinic raise a number of reasons why summary judgment in their favor was appropriate, we choose to address one issue common to both of them: proximate cause.

{¶ 16} "To establish a claim of medical malpractice, a plaintiff must prove by expert testimony the applicable standard of care, a breach of that standard of care, and that the breach was a proximate cause of the injuries alleged." *Hitch v. Thomas*, 6th Dist. Lucas No. L-09-1292, 2010-Ohio-3630, ¶ 17. Summary judgment in favor of the defendant-physician is appropriate where "'the plaintiff fails to present expert testimony that [the] physician breached the applicable standard of care and that the breach constituted the direct and proximate cause of the plaintiff's injury * * *.'" (Citations omitted.) *Culp v. Olukoga*, 2013-Ohio-5211, 3 N.E.3d 724, ¶ 70 (4th Dist.).

8.

{¶ 17} In Ohio, an expert's testimony concerning proximate cause is admissible only where his or her opinions as to the causative event are expressed in terms of probability. *Stinson v. England*, 69 Ohio St.3d 451, 455, 633 N.E.2d 532 (1994). "[A]n event is probable if there is a greater than fifty percent likelihood that it produced the occurrence at issue." *Id.* "If an expert testifying as to causation fails to testify in terms of probability, the expert's testimony is incompetent." *Steinmetz v. Latva*, 6th Dist. Erie No. E-02-025, 2003-Ohio-3455, ¶ 21.

{¶ 18} Dr. Darrah testified that if Harris-Miles' medical providers would have properly identified the risks posed by her underlying medical conditions, the management of her care—and her outcome—would have changed. He testified:

> The outcome would have changed as the management would have changed. While the surgery itself wouldn't have changed, doing a rotator cuff repair with a biceps tenotomy is a rotator cuff repair with a biceps tenotomy, unless they're extremely severe. But she would have been, in all likelihood, started on a steroid prior to surgery.

He explained that a steroid would have reduced inflammation and made her lungs less susceptible to thickening, "heal the alveoli a bit," make them more resilient, and make them "more available to accept" anesthesia, intubation, and ventilation, significantly reducing the likelihood of an alveolar hemorrhage. Dr. Serna and Cleveland Clinic contend, however, that Dr. Darrah was unable to state to a reasonable degree of medical probability that Harris-Miles would not have suffered an alveolar hemorrhage if a steroid had been prescribed. We agree.

9.

**{¶ 19}** Initially, Dr. Darrah claimed that he *could* state to a reasonable degree of medical probability that Harris-Miles' alveolar hemorrhage would not have occurred if a steroid, such as Prednisone, had been prescribed:

> Q: All right. So let me ask a different question. In the event Prednisone was started for Ms. Miles on September 8th and continued up until the time of surgery, October 6th, you can't say to a reasonable degree of medical probability, meaning more likely than not, that the alveolar hemorrhage would not have occurred:
>
> A: I can.

But as Dr. Darrah was further probed about his opinions, it became clear that he could not, in fact, meet this threshold. He testified:

> Q: And it's your belief that in the event Prednisone was started, let's say, on September 8th and continued through October 6th, so for nearly a month, that that would have prevented the alveolar hemorrhage?
>
> A: Reduced the risk, let's say.
>
> * * *
>
> Q: All right. So, and that's what I was trying to explore before. I totally understand your opinion that placing the patient on Prednisone would reduce the risk of alveolar hemorrhage, I totally get that, but that's different than saying that it would be more likely than not, greater than 51 percent chance, that she would not have an alveolar hemorrhage, do you see the difference?

10.

A:  I do.  Alveolar hemorrhage for patients that are, that have systemic sclerosis is rare.  Alveolar hemorrhage in patients that have Prednisone on board prior to surgery- -

Q:  Still rare.

A:  --unheard of.  I couldn't find a single case.

* * *

Q:  * * * So if this patient, Ms. Miles, received the Prednisone before surgery, it would have reduced the risk of alveolar hemorrhage, we've covered that?

A:  Certainly.

Q:  But isn't it fair for me to say that you can't say that if she got Prednisone before surgery the alveolar hemorrhage would not have happened?

A:  You could mitigate the risk, but you could not say it's absolute, no.

* * *

Q:  * * * All I'm saying, you know, if she gets the Prednisone before surgery you can't say that it's more likely than not the hemorrhage isn't going to happen?

A:  True, you just mitigate the risk of it happening.

Q:  That's—that's—okay, I got it.

A:  That's the furthest I can go.

**{¶ 20}** Harris-Miles disputes that Dr. Darrah was required to establish that it was more likely than not that her injury would not have occurred if a steroid had been prescribed. She claims that he was required to testify only that her injury *could have* been prevented had a steroid been prescribed. She cites *Wells v. Miami Valley Hosp.*, 90 Ohio App.3d 840, 631 N.E.2d 642 (2d Dist.1993), for the proposition that where the alleged malpractice raised involves an omission, the court must apply a "could have" standard, and not a "more likely than not" standard.

**{¶ 21}** *Wells* does not stand for this proposition. In fact, *Wells* held that "[w]hile there are no magic words for establishing a more than fifty-percent probability, there are some words, left unmodified, that are obviously insufficient to establish probability, such as 'could' or 'chance,'" or even "very strong chance." *Id.* at 854. Thus, despite her contention to the contrary, Harris–Miles was required to present testimony that it was more likely than not that her injury would have been prevented if a steroid had been prescribed.

**{¶ 22}** Given Dr. Darrah's inability to state to a reasonable degree of medical probability that the failure to prescribe a steroid proximately caused her alveolar hemorrhage, his testimony as to causation is incompetent, and, therefore, inadmissible. Harris-Miles' claims against both Dr. Serna and the Cleveland Clinic necessarily fail.

**{¶ 23}** Accordingly, we find Harris-Miles' assignments of error not well-taken.

### IV. Conclusion

**{¶ 24}** Harris-Miles failed to provide expert testimony establishing that the alleged negligence of Dr. Serna or the Cleveland Clinic proximately caused her injuries. We,

therefore, find her two assignments of error not well-taken, and we affirm the June 20, 2017 judgment of the Erie County Court of Common Pleas. Harris-Miles is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

_____
JUDGE

James D. Jensen, J.

_____

Christine E. Mayle, J.
CONCUR.

JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.